Terry Lee ALLEN, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 13296.

Missouri Court of Appeals,
Southern District,
Division Three.

March 29, 1984.

Jeri Leigh Caskey, Alton, for movant-appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Chief Judge.

Terry Allen was originally charged with capital murder. The incident precipitating filing of the charge was a service station robbery committed by Allen and two companions, Mitchel Gresham and Dennis Ashley, during which the proprietress, Thelma Searcy, was shot and killed and her husband, Bennie, was seriously injured.

As the result of a plea bargain, the capital murder charge against Allen for killing Thelma was dismissed, and he entered a plea of guilty to a charge of first degree assault for shooting Bennie Searcy with a 16-gauge shotgun. Allen was sentenced to life imprisonment after his plea.

After he was incarcerated, Allen filed a 27.26 [1] motion seeking to have his life imprisonment sentence vacated. The trial court held an evidentiary hearing, made written findings of fact and conclusions of law, and entered judgment denying the relief requested. On appeal, this court in *Allen v. State*, 635 S.W.2d 91 (Mo.App. 1982), reversed the trial court's judgment and remanded the cause for further proceedings on the grounds that the findings of fact and conclusions of law did not dispose of some of the issues raised in the motion, which were allegations of ineffective assistance of counsel and of newly discovered evidence which, if known to Allen, would have affected his attitude toward a plea bargain agreement.

Allen was given leave to amend his motion, and the trial court heard evidence, after which it made extensive findings of fact and conclusions of law, and again entered judgment denying the relief sought.

On appeal, Allen contends that he had ineffective assistance of counsel at the trial court level in that his trial counsel misled him about what the state's evidence was, or

failed to discover all of the state's evidence; that if he had known the true facts, he would not have pled guilty to the reduced charge, and that because he was not informed of the true facts, his guilty plea was not knowingly and voluntarily made.

Allen was the only witness at the hearing who supported such assertions. He claimed his trial counsel knew, or could have found out, that:

1) There were three spent shotgun shells found at the scene;

2) Allen was armed with a 16-gauge automatic shotgun while Gresham was armed with a single barrel 16-gauge sawed-off shotgun;

3) Two different sizes of shot were removed from the wounds in Bennie Searcy's body;

4) There were two holes poked, or shot, through a window screen near where Gresham was supposed to have been standing while he was shooting into the service station;

5) Allen, by his testimony, was standing outside the door to the station; and

6) There were scratches on the barrel of the shotgun held by Gresham, indicating it had been poked through a hole in the screen.

Allen's version of what happened at the murder scene was contained in his testimony at the hearing, when, in answer to questions by his attorney, he said:

"Q. Now the second question. Have you ever had—has it always been your understanding of the state's case that it has been alleged there were two shots—three shots fired by people who are testifying? In other words Benny [sic] Searcy testified at the preliminary hearing in Mitch Gresham's in February; is that right?

A. Right.

Q. How many shots did he say were fired?

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

THE COURT: February of what year?

Q. That same year.

A. '81.

THE COURT: Go ahead.

Q. February 27th. And did you see the transcript of that?

A. Yes, I seen a transcript of Benny [sic] making that statement.

Q. What did he say?

A. He said that the doctor said he had been shot two different times, I mean, you know, with two different type of shot, two different kinds.

Q. Did Benny [sic] Searcy say anything about how many shots he heard?

A. No. He made—he made the statement—I mean it happened so fast it was like, he said boom-boom, something like that, you know. I can't really recall exactly how he said it, you know. But he said he just remembers his wife, you know, disappearing and then the party at the door shooting, and he don't remember how many times he shot.

Q. But he did say it all took place pretty much at once?

A. Yes, he did.

Q. How far away was the window from the door?

A. I would say I would be as close as, I'd say from here to, I'd say the corner of the pew here.

Q. In other words the door would be where you are for instance?

A. Right, just like this. Like, I was like this.

Q. I'm not really asking where you are. I'm more asking if you were to just look at the side of the building, how far was the door away from the window?

A. That had the.....

Q. The window that had the two holes in it in the screen.

A. How far away was it?

Q. Uh-huh.

A. What do you mean, the gun?

Q. No, the door itself, just the door frame.

A. The door and the—let's see, the door is—it's all one piece, okay, is what it is.

Q. And is Benny [sic] Searcy outside that door or inside it?

A. He was inside. He was by the—the cash register, and he had his back turned at the time. And then when he heard—when he heard—after I bounced off the door, okay, I hollered, 'Freeze,' and he turned around. Okay. And when he turned around, okay, his wife had made a move to go back to the house. And when she made that move, that's when I made my move because I thought she was, you know, I figured she was going to call the police, you know, so I was running. Okay. When I had taken about a step and a half, I hear a gunshot. I come back and out of fright I just whirled around and I shot twice. I mean I just whirled around and shot. I did—there wasn't no aiming. It was just out of fright. I squeezed off the trigger twice."

Allen reasons from all of these "facts," that he could not have killed Thelma, and that she was probably killed by Gresham, and had he known this, he would have stood trial on the murder charge and would not have accepted the plea bargain. These suppositions of Allen were not supported by any other evidence at either of the 27.26 hearings.

The burden rested on Allen to prove his allegations. Weighing Allen's testimony and assessing its credibility was a function of the trial court. The trial court was under no obligation to believe Allen, and evidently did not. In its comprehensive findings of fact and conclusions of law, the trial court found that Allen was effectively represented by counsel at the pre-trial and pre-guilty plea level, that Allen's counsel did not withhold, or fail to discover, evidence which would have affected his advice to Allen regarding the plea bargain, and that Allen's guilty plea was entered knowingly and voluntarily, with full awareness of the relevant circumstances and likely consequences. It also found that Allen had

failed to establish his grounds for relief by a preponderance of the evidence.

The burden was on Allen to prove his grounds relied on, and the scope of our review is limited to a determination of whether the findings, conclusions, and judgment of the trial court were "clearly erroneous." Rule 27.26(f) and (j); *Baysinger v. State*, 552 S.W.2d 359, 359[1] (Mo.App.1977). Our review of the record indicates that the trial court's findings, conclusions and judgment are not clearly erroneous, and that no error of law appears. An extended opinion would have no precedential value.

Judgment affirmed. Rule 84.16(b).

CROW, P.J., and HOGAN, MAUS and PREWITT, JJ., concur.